AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Ruben Junior Figaro<br><br>*Defendant(s)* | )<br>)<br>) Case No. 15-6479-VALLE<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __9/8/2015 - 11/12/2015__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 846 | Conspired and Attempted to Possess with the Intent to Distribute 500 grams or more of Cocaine. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Thomas D. Masters; DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/13/2015

_____
*Judge's signature*

City and state: Fort Lauderdale, Florida       Alicia O. Valle; U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your affiant, Thomas D. Masters, being duly sworn, deposes and states:

1. I am a Special Agent of the United States Department of Justice, Drug Enforcement Administration ("DEA"), within the meaning of Section 878 (a) of Title 21, United States Code, and thus am an agent empowered by law to conduct investigations, make arrests, and seize property for violations of Title 18, United States Code and Title 21, United States Code.

2. I have been employed by the DEA for approximately 18 years and have worked at the Florence, South Carolina Resident Office, the Fort Lauderdale, Florida District Office, the Nassau, Bahamas Country Office and the West Palm Beach, Florida Office of the DEA.

3. I submit this affidavit based on information known to me personally from the investigation, as well as information obtained from others who were directly involved in the matter or have personal knowledge of the facts herein. The affidavit does not include all the information known to me, but only information sufficient to establish probable cause for the arrest of Ruben Junior FIGARO ("FIGARO"), for violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846 relating to conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine and attempted possession with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine.

4. On or about September 8, 2015, an undercover officer ("UC") received a telephone call from a suspected Colombian source of cocaine, later referred to as Rafael from Santa Marta, who asked the UC for the telephone number of a corrupt dock worker at the Port of Barranquilla, Barranquilla, Colombia, for the purpose of smuggling cocaine from Barranquilla to Port Everglades, Broward County, Florida. On that same date, the UC provided the source of supply's telephone number to the corrupt dockworker and the corrupt dockworker's telephone number to the source of supply so they

could communicate. All the above-referenced telephone calls were recorded.

5.  During the ensuing weeks, several recorded telephone conversations occurred between the UC, the source of cocaine, and the corrupt dockworker. The UC learned through those recorded telephone calls that the source of supply provided the corrupt dockworker with approximately one (1) kilogram of cocaine to secret aboard a vessel at the Port of Barranquilla to be imported to Port Everglades to be retrieved by the UC who would be paid a fee.

6.  On or about October 18, 2015, the UC made a telephone call to the corrupt dockworker and learned that the corrupt dockworker had secreted one (1) kilogram of cocaine in the bow section of the marine vessel Spyros. The dockworker directed the UC to call back in 40 minutes. This telephone conversation was recorded.

7.  Later that same day, the UC did as instructed and placed another telephone call that also was recorded to the corrupt dockworker. The corrupt dockworker handed the telephone to another male so the UC could learn where the one (1) kilogram of cocaine was located aboard the marine vessel Spyros. An unknown male explained to the UC that the one (1) kilogram of cocaine was hidden in the bow section, before the crane cabin, and behind a nearby motor.

8.  On or about October 22, 2015, DEA agents, with the assistance of Bureau of Immigration and Customs Enforcement agents and U.S. Customs and Border Protection officers, successfully offloaded one rectangular package, weighing approximately one (1) kilogram, of a substance that field tested positive for cocaine from the marine vessel Spyros. The location of the one (1) kilogram of cocaine was identical to the location told to the UC.

9.  During recorded conversations between the UC, the corrupt dockworker, and the source of cocaine in Colombia, the UC was advised that additional kilograms of cocaine were to be shipped to the UC. However, attempts to import more kilograms of cocaine were unsuccessful.

10.     On or about November 5, 2015, the corrupt dockworker called to advise that the UC would be receiving a telephone call from a courier who would pay the UC $3,000 the UC wanted for retrieving the kilogram of cocaine from the marine vessel Spyros at Port Everglades.  Upon payment of $3,000, the UC agreed to release the one (1) kilogram of cocaine to the courier.  This telephone conversation was recorded.

11.     On or about November 9, 2015, the UC spoke to an unknown male that was later identified as FIGARO.  FIGARO told the UC that FIGARO had been instructed to contact the UC.  The UC and FIGARO agreed $3,000 would be paid by FIGARO to the UC for services rendered before the one (1) kilogram of cocaine would be delivered to FIGARO.  This telephone call was recorded.

12.     On or about November 11, 2015, FIGARO confirmed to the UC his possession of the "papers" or the $3,000 payment owed to the UC during a recorded telephone conversation.  FIGARO and the UC agreed to meet the next day.

13.     During a recorded telephone conversation the morning of November 12, 2015, the UC instructed FIGARO to meet the UC at the parking lot of Bass Pro Shops, Dania, Broward County, Florida.

14.     On or about November 12, 2015, at approximately 12:00 P.M., FIGARO arrived at the Bass Pro Shops parking lot driving a grey Nissan 4-door sedan and met an UC inside a vehicle outfitted with recording equipment.  Upon delivery by FIGARO of the $3,000.00 payment owed, one (1) kilogram of cocaine was brought by a second UC to the undercover vehicle.  An UC cut into the one (1) kilogram of cocaine and handed FIGARO the kilogram of cocaine for FIGARO to examine.   FIGARO inspected the cocaine by feel and taste. The UC gave a predetermined signal and FIGARO was arrested without incident.  A video recording with audio of this meeting was obtained.

15     Subsequent to being advised of his *Miranda* rights and freely and voluntarily waiving the

same, FIGARO admitted knowing cocaine was the substance he received from the UC. FIGARO's motivation to participate was the promise of a payment of $3,000.00.

16. Based on the above information and facts, your affiant submits there is probable cause to believe that Ruben Junior FIGARO, violated Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B), and 846 by conspiring to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine and attempting to possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Thomas D. Masters, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 13th day of November, 2015.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE